**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **RALPH STEWART, JR.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL NO. 3:09cv738-HEH** |
| ) | |
| **VCU HEALTH SYSTEM AUTHORITY** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the Defendant's Motion to Dismiss and for Attorney's Fees (ECF No. 116). The matter has been thoroughly addressed by the parties' submissions and the Court has conducted an extensive review of the record in this matter, including a complete review of the videograph[1] of the Plaintiff's second deposition, taken on September 23, 2011. The Court dispenses with oral argument because it would not materially aid in the decisional process. For the reasons set forth herein, it is the recommendation of this Court that the Defendant's Motion to Dismiss and for Attorney's Fees (ECF No. 116) be GRANTED, and that the Defendant be awarded attorney's fees incurred as a result of Plaintiff's violations of this Court's prior orders.[2]

## I. BACKGROUND AND FACTUAL FINDINGS

Plaintiff Ralph Stewart Jr. ("Stewart" or the "Plaintiff") brought this action against his

---

[1] A thorough review of the videograph is rendered necessary by Stewart's repeated allegations of misconduct and deception on the part of defense counsel. (See, e.g., Pl.'s Resp. to Def.'s Mot. and Suppl. Mem. ("Pl.'s Mem.") at 6-7, ECF No. 146.)

[2] The Court also recommends that all motions now pending before this Court (ECF No. 126) and U.S. District Judge Henry Hudson (ECF Nos. 100, 131, 147) be DENIED as moot.

former employer, Virginia Commonwealth University Health System Authority ("VCUHS" or

the "Defendant"), alleging violation of Title VII of the Civil Rights Act of 1964, the Civil Rights

Act of 1991, and Title I of the Americans with Disabilities Act of 1990.  However, the

allegations and facts related to the underlying claims are not implicated by the motions now

pending before the Court.  Instead, the focus of the present inquiry is whether Stewart has

violated this Court's previous orders to such a degree that the sanction of dismissal is appropriate

pursuant to Fed. R. Civ. P. 37(b)(2)(v), 37(d)(1)(A)(ii), and 41(b).

**A.      Failure to Comply with the First Discovery Order**

On August 23, 2011, this Court entered a Memorandum Order (the "First Discovery

Order," ECF No. 103) which, *inter alia*, found that Stewart had failed to comply with certain

discovery requests.  Accordingly, the Court ordered him to answer Interrogatory No. 4, which

sought information about his employment history.  (Id. at 9-10.)  Stewart was also ordered to

produce documents in response to Document Request Nos. 6, 11, 13, and 18.  (Id. at 10-11.)

Among other things, the document requests at issue sought Stewart's tax returns during the

relevant period and tape recordings of conversations with VCUHS employees which he claimed

to possess.  (Id.)

The First Discovery Order also required Stewart to attend a continuation of his deposition

based upon his prior agreement to do so.  (Id. at 2-4.)  Specifically, the Court ordered him to

testify in a deposition on either September 1st or 2nd for a duration of four (4) hours.  (Id. at 3.)

In denying Stewart's Motion to Quash the Deposition (ECF No. 68), the Court specifically found

that Stewart had misrepresented his agreement to continue the deposition, misrepresented the

duration of the first deposition, and mischaracterized the conditions under which it was taken.

(First Discovery Order at 3.)  Accordingly, the Court granted attorney's fees to the Defendant for

its efforts in securing the continued deposition.

In an apparent act of contempt, Stewart refused to attend his continued deposition as ordered.  Indeed, he sent an email to opposing counsel expressly indicating that he "will not be attending the deposition on the 2nd of September."  (Decl. of Lynn Jacob ("Jacob Decl.") Ex. B-3, ECF No. 117-2; see also Dep. Transcript of Suzanne Stewart ("Suzanne Dep.") at 5:10-21, ECF No. 117-3.)  He further expressed his intent to violate this Court's First Discovery Order during his wife's deposition on August 31, 2011, when he indicated that he would not be answering Interrogatory No. 4 or respond to the document requests, as required.  (Suzanne Dep. at 9:19-10:14.)  Together with Stewart, counsel for VCUHS then contacted the Chambers of U.S. District Court Judge Henry Hudson, the presiding judge in this matter, who explicitly warned Stewart that his case could be dismissed if he failed to comply with the Court's orders.  (Jacob Decl. at ¶ 11.)  Consistent with his stated intentions, Stewart did not appear for his continued deposition on September 2, 2011.  (Id. at ¶ 13.)

On September 2, 2011, VCUHS filed a Motion to Dismiss and for Attorney's Fees (ECF No. 116), arguing that Stewart had failed to comply with this Court's First Discovery Order so as to justify dismissal.  In a *sua sponte* effort to secure compliance with its previous orders rather than impose sanctions, this Court issued a Show Cause Order (ECF No. 123) on September 7, 2011, ordering Stewart to appear before Judge Hudson on September 16, 2011 to show cause why he should not be found in contempt for violating this Court's First Discovery Order.  The Show Cause Order specifically warned Stewart, for a second time, that his case could be dismissed as a result of his conduct.  Stewart appeared as ordered, at which time Judge Hudson reiterated the warning that his case could be dismissed should he fail to abide by this Court's orders.  (Minute Entry for proceedings held on September 16, 2011, ECF No. 133.)  Judge

Hudson specifically ordered Stewart during the hearing to sit for a continued deposition and supply all materials so ordered by this Court no later than 5:00 p.m. on September 23, 2011.[3]

**B.      Continuation of Stewart's Deposition**

Before Stewart's continued deposition could be conducted, he objected to holding the deposition at the offices of counsel for VCUHS and asked the Court to supervise the deposition at its courthouse.  To that end, Stewart forwarded an email to the Chambers of U.S. Magistrate Judge Hannah Lauck seeking an order granting his request.  (Pl.'s Mem. at 4.)  In an effort to resolve the issue, the Court held a conference call with Stewart and counsel for VCUHS, at which time the Court instructed him to attend his continued deposition at the offices of opposing counsel within the timeframe mandated by Judge Hudson's previous Order.  Anticipating from the exchange that there would be further disagreement during the course of the continued deposition, the Court also advised the parties of its unavailability on September 23, 2011. Should the need arise for court intervention during the continued deposition, the Court instructed the parties to contact Judge Lauck.

Stewart's objection to the location for the renewed deposition foreshadowed his conduct throughout the deposition.  To begin with, he did not bring his reading glasses to the deposition and, on occasion, attempted to use this as an excuse for his inability to review a document.[4] Based on the Court's own review of the deposition videograph, it is clear to the Court that

---

[3] Stewart claims that Judge Hudson reprimanded defense counsel for "gamesmanship" during the hearing.  (Pl.'s Mem. at 3.)  However, it was principally Stewart's gamesmanship that was under review in that hearing.  Stewart has missed the point of each of the Court's efforts to give him an opportunity to comply with the Court's mandates.

[4] It is generally this Court's practice to cite to a deposition transcript when referencing most, if not all, relevant testimony.  However, VCUHS has submitted only those portions of the transcript of Stewart's deposition that it specifically relies upon in its Supplemental Memorandum.  (See Def.'s Supplemental Mem. in Sup. Mot. for Dismissal ("Def.'s Suppl.") Ex. C, ECF No. 140-3.)  Accordingly, most of the Court's recitation of Stewart's continued deposition is based upon its own extensive review of the videograph, which will not be cited.

Stewart had no difficulty reading any documents presented to him during the course of his deposition. Ultimately, he admitted as much when questioned about his failure to bring the reading glasses to the deposition, agreeing that he could, in fact, read the documents presented to him.

In a similar vein of neglect, Stewart brought a cellular telephone that purportedly contained relevant recordings of conversations with VCUHS employees, but he did not bring a battery for it. The Court's First Discovery Order specifically instructed Stewart to produce the "notes and tape recordings related to the Plaintiff's discussions with anyone regarding the allegations in this lawsuit," as such recordings were requested by VCUHS's Document Request No. 6. (First Discovery Order at 10.) In an attempt to "split hairs," he testified that audio recordings on his smart phone were not "tapes." Regardless, his bringing the cellular telephone itself evidences his understanding that he was, in fact, ordered to produce such recordings. At the same time, his failure to provide the power supply so that VCUHS could listen to the recordings and question Stewart about them constitutes evidence of bad faith and an utter disregard for this Court's First Discovery Order.[5]

Of even greater concern, however, is Stewart's apparently knowing failure to provide the income tax returns that he filed with the Internal Revenue Service during the past several years. Stewart had previously objected to providing VCUHS with his income tax returns, arguing that because he files jointly with his wife, they contain confidential information not relevant to his own income. Overruling the objection and designating such documents as confidential pursuant

---

[5] The relevance of such recordings ought to be well-known to Stewart. In an email sent to several VCUHS employees on July 28, 2011, Stewart informed them that he had recorded conversations with them on his "smart-phone," threatening to use those recordings against them. Indeed, he testified during his deposition that he did this primarily as a threat to his former co-workers to ensure that they would tell the truth when deposed. (Def.'s Suppl. Ex. C, Stewart Dep. Ex. 45, ECF No. 140-3.)

to an agreed protective order, the Court ordered Stewart to produce the tax returns regardless of whether they were jointly filed with his wife. (First Discovery Order at 10.)

Rather than produce the tax returns, Stewart, either himself or through a third party's efforts, prepared a series of completed IRS Form 1040s purporting to be his income tax returns from 2007 through 2010. These unsigned documents were each marked "taxpayers file a joint return. This return is prepared only to show Ralph Stewart's income." (Def.'s Suppl. Ex. 5, filed under seal.) The implication is that Stewart had these documents prepared solely for the purpose of the present litigation in order to avoid providing the income tax return that he filed jointly with his wife -- as he was ordered to do. And although the documents raise more questions than they answer, Stewart has offered no satisfactory explanation for why he chose to submit the substitute versions of his tax returns.[6]

Indeed, Stewart's attempts to explain the purported income tax returns illustrate how he has conducted himself throughout his continued deposition. First, he confirmed the documents' authenticity, claiming that they were his actual tax returns. (See, e.g., Transcript of the Dep. of Ralph Stewart ("Stewart Dep.") at 1015:9-13.) Then, he changed his answer, stating that he does not have copies of his income tax returns. As a third explanation, he testified that he files jointly with his wife -- an objection which this Court already overruled. (First Discovery Order at 10.) Based on the joint-filing status, he argued that he cannot compel his wife to provide income tax returns, even though those returns were filed in his name, as well as hers, and were presumably signed by both.

Almost every single time that counsel asked him a question during the continued

---

[6] To this day, despite the Court's order to the contrary, Stewart continues to claim that he "was never obligated to produce joint tax returns to Defendants." (Pl.'s Mem. at 6.) He has been explicitly instructed to produce those documents no less than four times now, and yet he refuses to do so.

deposition, Stewart repeated the question, argued, then proceeded to explain why he could not answer the question.  Usually, such testimony took the form of "I do not remember" or "I do not know," even where the obvious nature of the question concerned some matter within his personal knowledge.  (See, e.g., Stewart Dep. at 1045:11, 1049:5, 1050:22, 1052:22-23, 1055:17.) Rarely, if ever, did he give a "yes" or "no" answer to direct "yes or no" questions.  (See, e.g., Stewart Dep. at 1047:1-1048:2.)  The effect of responses of this nature was to exacerbate the exchange between counsel and deponent, converting a one minute question and answer into a ten minute argument.

One noteworthy example of such an exchange involved a prior lawsuit in which Stewart sued for personal injuries.[7]  When asked about the written complaint, Stewart said that he did not remember seeing it before.  (Stewart Dep. at 1040:4-5.)  He then expressed some uncertainty as to whether the lawsuit was settled and, ultimately, could not remember the amount of the settlement.  (Id. at 1040:17-24.)  Stewart could not even indicate if the settlement was for more or less than ten thousand dollars, or more or less than forty thousand dollars.  (Id.)  He provided almost identical "I don't remember" answers to questions about a subsequent lawsuit that he had filed approximately eleven years ago.  (See Stewart Dep. at 1055:6-1056:8.)

On several occasions, Stewart closely scrutinized documents purportedly signed by him and refused to confirm whether or not the document contained his handwriting or signature. (See, e.g., Id. at 1063:18-20, 1064:5-6, 1068:14-21.)  To be clear, he did not necessarily deny that the handwriting was his -- he simply evaded the question.  For example, when asked about

---

[7] In the interest of fairness to both parties, the Court has endeavored to provide examples of the sort of conduct at issue, but cannot reasonably recite every instance of Stewart's evasive testimony.  To do so would require a nearly complete recitation of the deposition transcript, as it appears to this Court that nearly every answer given to counsel's questions resulted in an argumentative exchange.  Suffice it to say that the examples set forth herein are by no means exhaustive.

an EEOC charge that he had filed against a previous employer, Stewart was asked about the handwriting on the document.  He responded that it did not "look like my handwriting," and he then asked opposing counsel, "[w]hat's this crazy signature here?"  (Id. at 1058:9-14.)  He then changed his testimony to say that he was not sure if it was his signature or not, but he admitted filing the EEOC charge in question.  (Id. at 1058:18-21.)  He went so far as to accuse someone else of forging his signature on the very EEOC charge that he admitted to filing.  (Id. at 1058:22-1059:1.)  He provided a similarly evasive answer when questioned about his signature on a subsequent EEOC charge, testifying that he could not recall accusing another employer of retaliation.  (Id. at 1059:8-20.)[8]

After engaging counsel in this manner for approximately three hours and fifteen minutes on the record, Stewart abruptly demanded that the deposition cease.  (Stewart Dep. at 1004:15-1006:6.)  Citing this Court's First Discovery Order, which had provided for a continued deposition of only four (4) hours, Stewart refused to answer any further questions.  (First Discovery Order at 3.)  At that point, counsel for VCUHS contacted Judge Lauck's chambers and asked her to intervene.

Judge Lauck explained to Stewart that parties are permitted to take breaks during depositions, and that only the time that was on the record counted towards the time limit.  In fact, Stewart already knew this, as the issue of taking breaks was addressed in the Court's First Discovery Order.  (First Discovery Order at 2-4.)  Accordingly, Judge Lauck ordered Stewart to continue the deposition for another one hour and ten minutes, due in part to his dilatory conduct as well as the brief time that was spent off the record during breaks.  (Stewart Dep. at 1012:15-23.)  In addition, Judge Lauck reviewed the Court's previous orders and found that Stewart

---

[8] It is hard to imagine that the very serious act of filing a lawsuit or alleging discrimination could so easily slip from one's memory.

violated those orders by: (1) failing to provide his income tax returns filed jointly with his wife; (2) failing to answer Interrogatory No. 4 by neglecting to provide dates and contact information for each previous employer; and (3) by failing to sign the answer to Interrogatory No. 4.  (Id. at 1021:23-24, 1032:20-25, 1036:9-23, 1037:6-15.)

The telephone conference with Judge Lauck lasted approximately forty-five (45) minutes. Notably, Stewart asked the Court whether this time could be counted against the additional one hour and ten minutes of deposition time that Judge Lauck ordered.  (Stewart Dep. at 1018:13-15.)  Judge Lauck emphatically responded "no."  (Id.)  The Court also notes that Stewart smirked and laughed several times as Judge Lauck issued her telephonic ruling, showing a continued disrespect for this Court's authority.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 37(b)(2)(v), 37(d)(1)(A), and 41(b), a court may dismiss a party's claims if it fails to abide by the Rules or any court order.  Such a dismissal is within the sound discretion of the court.  Anderson v. Found. for Advancement, 155 F.3d 500, 504 (4th Cir. 1998).  Prior to doing so, a court must warn the plaintiff that the suit may be dismissed if a failure to comply with court orders persists, and should give the plaintiff an opportunity to comply.  Choice Hotels Int'l, Inc. v. Goodwin & Boone, 11 F.3d 469, 471-72 (4th Cir. 1993).

The Fourth Circuit, the appellate authority governing this jurisdiction, has articulated four factors that Courts must consider when assessing a motion to dismiss brought pursuant to Rule 37: (1) the degree of the non-complying party's bad faith; (2) the prejudice suffered by the other party as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction; and (4) the efficacy of a less drastic sanction.  Mut. Fed. Sav. & Loan Ass'n v. Richards & Assoc., Inc., 872 F.2d 88, 92 (4th Cir. 1989).  A virtually identical test applies to dismissal pursuant to

Rule 41, whereby a court must consider: (1) the degree of the plaintiff's personal responsibility for the failure to comply; (2) the prejudice caused to the defendant; (3) the plaintiff's history of deliberately proceeding in a dilatory fashion; and (4) the availability of a less drastic sanction. Ballard v. Carlson, 882 F.2d 93, 95 (4th Cir. 1989).[9]

## III. DISCUSSION OF DISMISSAL

In this case, the Court must determine at what point a plaintiff's uncooperative, dilatory, and contemptible behavior goes so far that it justifies dismissal of the lawsuit.  Although that point was arguably reached long ago, this Court has repeatedly afforded Stewart opportunities to alter his behavior and comply with the Court's First Discovery Order and related subsequent orders.  As Judge Lauck noted, Stewart was ordered to answer VCUHS's Interrogatory No. 4 and provide responsive documents no less than three times -- Judge Lauck's reiteration of this requirement constitutes a fourth opportunity for Stewart to comply.  (Stewart Dep. at 1036:15-20.)  In response to each ruling, Stewart has violated both the spirit and letter of the federal rules governing discovery in civil cases, unfairly taxing the resources of this Court and those of VCUHS.  Each time, Stewart has been warned that his lawsuit might be dismissed, and so it is abundantly clear that he has notice of the forthcoming sanction.  See Choice Hotels, 11 F.3d at 471-72.  With this knowledge in hand, he continues to defy the Court, suggesting that no sanction short of dismissal will suffice.

Responding to the Motion to Dismiss, Stewart asserts that he has "made every attempt to comply with the Court's rulings."  (Pl.'s Mem. at 1.)  He also accuses counsel for VCUHS of

---

[9] Because the two tests are "virtually identical," courts in this Circuit often "combine [the] analysis of the question whether dismissal is appropriate under Rules 37 and 41."  Silvious v. RR Donnelly & Sons, No. 5:10cv116, 2011 U.S. Dist. LEXIS 96920, at *4-9 (W.D. Va. Aug. 29, 2011) (citing Carter v. Univ. W. Va. System, 23 F.3d 400 (4th Cir. 1994)).  This Court shall do likewise, combining the two four-part tests into a single five-part test since three of the four factors in each are identical.

"knowingly offer[ing] material evidence that they know to be false" and of perjury -- both very serious allegations, unsupported by any evidence. (Id. at 1, 5.) He goes so far as to claim that he possesses new evidence of a conspiracy between his former counsel and defense counsel, though he has provided no evidence in support of the allegation. (Id.) He also accuses defense counsel of accosting him in the Court's lobby, and asks the Court to review its surveillance footage to confirm this fact.[10] With no basis whatsoever, Stewart alleges that he was harassed by opposing counsel due to his disability, presumably attention deficit disorder (though the specific disability is not explained or discussed in his memorandum). Again, the Court has reviewed the entire deposition videograph and can find no evidence of any misconduct or harassment on the part of defense counsel. In short, Stewart offers no factual or legal basis to deny the motion. Instead, he deflects responsibility to everyone but himself, accusing the Court of allowing him to be "victimized, subjected to unfair and improper interrogation." (Pl.'s Mem. at 12.)[11]

Although "[p]ro se litigants are entitled to some deference from courts . . . they as well as other litigants are subject to the . . . respect for court orders without which effective judicial administration would be impossible." Ballard, 882 F.2d at 96. To that end, it is appropriate for the court to evaluate Stewart's proffered excuses as part of its analysis. Id. Based on its own review of the record, including its complete and time consuming review of the deposition videograph, it is clear that Stewart's excuses have no merit.

To determine whether dismissal is appropriate, the Court must now consider the

---

[10] The Court will not indulge this request as it is well beyond the scope of the pending motion and, at best, represents yet another effort to deflect responsibility. The purpose of the show cause hearing was to provide Stewart with an opportunity to comply with this Court's orders -- not to permit further delay, gamesmanship, or posturing.

[11] Stewart also engages in a rambling dialogue about defamation and spoliation, neither of which are issues before the Court. (Pl.'s Mem. at 7.) The Court simply cannot understand the relevance of the discussion, and so it will not be addressed.

overlapping factors set forth in <u>Mut. Fed. Sav. & Loan Ass'n</u>, 872 F.2d 88, and <u>Ballard</u>, 882 F.2d 93: (1) the degree of Stewart's bad faith and personal responsibility for the failure to comply; (2) the prejudice suffered by VCUHS; (3) the deterrence value of the sanction of dismissal; (4) Stewart's history of proceeding in a dilatory fashion; and (5) the availability of less drastic sanctions.  Each of these factors weighs in favor of granting the motion to dismiss.

## A.    Stewart's Bad Faith and Personal Responsibility

Arguably, this Court could have dismissed Stewart's claims when VCUHS first filed its motion to dismiss on September 2, 2011.  As explained in detail in the Show Cause Order, Stewart appeared to be in contempt of this Court's First Discovery Order by failing to answer Interrogatory No. 4, failing to provide audio recordings, and failing to provide his tax returns. (ECF No. 123.)  Indeed, he went so far as to state his intention to violate the First Discovery Order when, on the record, he said that he would not be attending the continued deposition. (Suzanne Dep. at 5:10-21.)  "In this circuit, bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it."  <u>Axiom Res. Mgmt. v. Alfotech Solns., LLC</u>, No. 1:10cv1011, 2011 U.S. Dist. LEXIS 69450, at *18-19 (E.D. Va. June 3, 2011) (quoting <u>Rabb v. Amatex Corp.</u>, 769 F.2d 996, 999 (4th Cir. 1985)).  The Court issued the Show Cause Order in an effort to secure compliance with its orders, rather than proceed directly to the sanction of dismissal.  Knowing this, Stewart has nevertheless failed to comply, even to this day.

At the Show Cause Hearing on September 16, 2011, Judge Hudson provided Stewart with an opportunity to explain his conduct.  Stewart blamed his former counsel for most of his discovery neglect, specifically noting that certain documents remained in former counsel's possession.  However, as instructed by this Court, a representative from Stewart's former

lawyer's office attended the hearing with the relevant files in hand and provided the file to Stewart in the Court's presence.  That excuse, if ever valid, no longer "held water."  Stewart's actions during discovery are his responsibility alone.  See Silvious, 2011 U.S. Dist. LEXIS 96920, at *6 ("[T]he plaintiff is proceeding *pro se* so he is entirely responsible for his actions").

Stewart's conduct with his cellular telephone recordings further illustrates the bad faith nature of his discovery responses.  Playing with semantics, Stewart claimed that he was under no obligation to produce digital recordings of conversations with VCUHS employees because the Court's First Discovery Order spoke only about audio "tape" recordings.  (First Discovery Order at 10.)  Obviously, he knew that he was required to produce the digital recordings on his telephone, given the fact that he produced the cellular telephone at his continued deposition.  However, he had removed the battery and claimed that he could not find it.  At the same time, approximately one month prior to the continued deposition, he had threatened to use the recordings to impeach prospective witnesses.  Either Stewart knew that his threat was an empty one, or he purposely removed the battery to thwart disclosure.  In any event, such conduct is intentional and in bad faith.

## B.      Prejudice Suffered by VCUHS

Consistent with the policy that the Federal Rules of Civil Procedure be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding," discovery under the Federal Rules is designed to foster resolution on the merits and prevent surprise.  Compare Fed. R. Civ. P. 1 with Fed. R. Civ. P. 26(b)(1).  See, e.g., Bailey v. Fairfax County, No. 1:10cv1031, 2011 U.S. Dist. LEXIS 95281, at *4 (E.D. Va. August 18, 2011).  This purpose is frustrated whenever a party repeatedly fails to comply with its discovery obligations.  In practice, a party cannot pursue its claims or defenses without an adequate

opportunity to obtain evidence through the broad discovery contemplated by the Federal Rules. See Kline v. Martin, 345 F. Supp. 31, 32 (E.D. Va. 1972) ("Federal Rules contemplate the broadest discovery possible in the search for the truth").

Stewart's argumentative, unresponsive, and vague answers rendered the deposition useless as a tool for gathering information. His most common answer to even simple questions was either that he "cannot answer," "I don't remember," or "I don't know" -- even when the question asks for simple information well-within Stewart's knowledge. (See, e.g., Stewart Dep. at 1045:11, 1049:5, 1050:22, 1052:22-23, 1055:17.) Despite the fact that Stewart is supposedly well-educated and intelligent, he could not recognize his own signature or handwriting on numerous occasions. (See, e.g., Stewart Dep. at 1063:18-20, 1064:5-6, 1068:14-21.)

Under such circumstances, VCUHS gained little if any real information about the nature of Stewart's claims or the basis, if any, for its own defenses. It has now spent in excess of thirteen (13) hours deposing Stewart, but has not obtained clear answers to its own clear questions. It would be unfair to expect any party to defend itself under such conditions. Thus, VCUHS is clearly prejudiced by Stewart's conduct.

C.      **Deterrence Value**

The Court must be able to maintain the orderly administration of its civil cases in order to allow parties to obtain a fair hearing on the merits -- both for the benefit of plaintiffs and defendants. To that end, parties must understand that there are very serious consequences to misconduct in the discovery process, and that such consequences may be outcome determinative. This is especially true in a case like this, because Stewart has been given several opportunities to correct his behavior, but has not done so. See, e.g., United States v. One Tract of Real Prop. Located in Little River Township, No 95-1282, 1997 U.S. App. LEXIS 2875, at *11 (4th Cir.

February 20, 1997) (emphasizing the deterrence effect of dismissal where there are repeated failures to comply with court ordered discovery).

Here, the Court's First Discovery Order required Stewart to pay VCUHS's attorney's fees due to his bad faith argument against the continued deposition, as well as certain misrepresentations made in pursuit of the argument. (First Discovery Order at 3-2.) He has nevertheless persisted in his misconduct, despite several additional attempts to secure compliance in other ways. If the Court continued to seek compliance after four opportunities for him to do so, litigants may get the impression that this Court is incapable of enforcing its own orders. Dismissal will send "an unmistakable message to [Stewart] and others that the judicial system will not tolerate repeated misconduct never wholly remedied in the future." Mut. Fed. Sav. & Loan Assn., 872 F.2d at 94.

As Judge Lauck explained to Stewart during his continued deposition, he brought the lawsuit, and in doing so, he accepted certain responsibilities. (Stewart Dep. at 1023:9-13.) "The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders." Ballard, 882 F.2d at 95. The Court could not manage its heavy caseload if parties are permitted to act as has Stewart in this litigation.

## D.      Stewart's History of Dilatory Practices

The record in this case is replete with examples of Stewart's dilatory practices. To this day, despite multiple warnings and Court orders, Stewart has not answered or signed Interrogatory No. 4, produced his jointly-filed tax returns, or permitted VCUHS to listen to the recordings that he purportedly made of conversations with VCUHS employees. As Judge Lauck noted, Stewart has failed in this respect on three occasions (four when the Court counts Judge

Lauck's own admonition).  At the same time, he failed to appear for his deposition on at least

one occasion and attempted to stop his continued deposition prematurely, forcing the Court to

intervene for nearly one-hour.

In her exchange with Stewart during the continued deposition, Judge Lauck explained to

Stewart that it was appropriate for opposing counsel to take reasonable breaks during the

continued deposition.  This explanation should not have been necessary given the fact that

Stewart had previously moved to quash the continued deposition on the basis that he was,

himself, denied such breaks when first deposed.  (See First Discovery Order at 3.)  His attempts

to have it both ways suggest that he will not cooperate with VCUHS's discovery requests under

any circumstances, thereby frustrating their efforts at every turn.  The only conclusion to be

drawn is that Stewart is delaying and posturing without a basis in law or fact to do so.  Not only

does such conduct evince dilatory practices; it further supports the Court's finding of bad faith.

### E.      No Other Sanction Will Suffice

The Court has made no fewer than three previous efforts to secure Stewart's compliance

with its orders, but to no avail.  As a clear example of Stewart's contemptible conduct, he still

has yet to sign his answer to Interrogatory No. 4 -- a five second exercise that allows the parties

to treat the answer as one given under oath.  The Court has issued an order compelling discovery,

required Stewart to pay attorney's fees for his filing a dilatory motion, issued a Show Cause

Order, and attempted to referee the continued deposition -- all to no avail.  After no less than

three warnings that his case will be dismissed, it appears that no sanction will cause Stewart to

comply with the rules and orders of this Court.

One example of such persistent violation of the First Discovery Order is Stewart's

submission of contrived tax returns and refusal to produce his jointly-filed tax returns, even

though the Court ordered him to do so.  To this day, Stewart denies that he is under any

obligation to provide the joint returns, despite the Court's clear instructions to the contrary on

multiple occasions.  (Pl.'s Mem. at 6-7.)  Moreover, Stewart takes issue with the allegation that

the purported tax returns were prepared solely for litigation.  (Pl.'s Mem. at 7.)  No other

conclusion can be reached because Stewart claims that he files jointly with his wife and the

purported income tax returns submitted say, on their face, "taxpayers file a joint return.  This

return is prepared only to show Ralph Stewart's income."  (Def.'s Suppl. Ex. 5, filed under seal.)

The documents speak for themselves -- they are not the tax returns that Stewart filed with the

IRS, but are some form of substitute prepared in the course of this litigation.  Such a substitute

was never offered as an alternative to compliance with this Court's First Discovery Order.  It is

obvious from this example that nothing this Court does will motivate Stewart to comply with his

discovery obligations.

 "[D]ismissal is not a sanction to be invoked lightly."  <u>Ballard</u>, 882 F.2d at 95 (citations

omitted).  However, the Court has made numerous attempts to secure Stewart's compliance

without success, and there is a limit to the Court's patience.  "[A]ny other course would []

place[] the credibility of the court in doubt and invite[] abuse."  <u>Id.</u> at 96.  The only sanction that

remains is dismissal, and this Court believes that such a sanction is warranted in this case.

### IV. ATTORNEYS' FEES

 Fed. R. Civ. P. 37(b)(2)(C) provides that "the court *must* order the disobedient party, the

attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

*caused by* the failure, unless the failure was substantially justified or other circumstances make

an award of expenses unjust."  (emphasis added).  Two aspects of this rule are significant here.

First, the use of the word "must" indicates that fees are mandatory where the sanction of

dismissal is imposed.  See Linde v. Arab Bank, PLC, 269 F.R.D. 186, 204-05 (E.D.N.Y. 2010) (citation omitted) (noting that the Second Circuit has acknowledged that the Rule's language suggests that an award of expenses is mandatory).  Second, the fees must be "caused by" the discovery misconduct in question.

Here, VCUHS seeks "all of Defendant's expenses since Plaintiff's attorney withdrew." (Def.'s Mem. Sup. Mot. to Dismiss at 14, ECF No. 117.)  While Stewart has not specifically addressed the issue of attorney's fees, the Court will nevertheless limit the fee award to the mandate of the rule.  Although fees are mandatory, only those fees arising out of Stewart's misconduct shall be awarded.  Thus, the Court recommends that attorney's fees and costs be GRANTED, but that Defendant VCUHS should be required to itemize those fees to include only those resulting specifically from Stewart's misconduct in a subsequently filed motion for attorney's fees made pursuant to Fed. R. Civ. P. 54(d)(2).

## V. CONCLUSION

For the reasons stated herein, it is the recommendation of this Court that the Defendant's Motion to Dismiss and for Attorney's Fees be GRANTED and that the Defendant be awarded attorney's fees and costs incurred as a direct result of Plaintiff's failure to comply with Court orders, the amount of which shall be determined upon consideration of a petition filed by Defendant pursuant to Fed. R. Civ. P. 54(d)(2).

Let the Clerk file this Report and Recommendation electronically, mail a copy to the Plaintiff at his address of record, and forward a copy to the Honorable Henry E. Hudson, with notification to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: November 22, 2011