IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RALPH STEWART, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:09CV738–HEH |
| | ) |
| VCU HEALTH SYSTEM | ) |
| AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

In its February 13, 2012 Memorandum Opinion adopting the Report and Recommendation of the U.S. Magistrate Judge and granting Defendant VCU Health System Authority ("VCU" or "Defendant")'s Motion for Dismissal and Attorney's Fees, this Court observed that, despite numerous warnings of looming sanctions, Plaintiff Ralph Stewart, Jr. ("Stewart" or "Plaintiff") had "failed to act in good faith, and ... demonstrated contempt for both opposing counsel and the Court." (ECF No. 178, 13-14.) In view of Plaintiff's repeated failure to comply with his discovery obligations, this Court found drastic sanctions to be warranted and dismissed Stewart's employment discrimination action pursuant to Federal Rules of Civil Procedure 37 and 41. The Court further concluded that Stewart should "be required 'to pay the reasonable expenses, including attorney's fees, caused by' his failure to comply with the rules and orders of this Court," but deferred judgment as to the appropriate amount. (*Id.* at 15 (quoting Fed. R. Civ. P. 37(b)(2)(C)).)

This matter now comes before the Court on Defendant's Petition for Attorney's Fees, filed on March 15, 2012.[1] Pursuant to this Court's prior Order, Defendant seeks to recover attorney's fees in the amount of $33,585. Specifically, VCU requests reimbursement for 33.7 hours billed by lead counsel Lynn F. Jacob at an hourly rate of $470, 13.9 hours billed by paralegal Randy Thompson at a rate of $180, and the following expenditures by associate counsel: 26.5 hours billed by Sara B. Rafal at a rate of $360; 17 hours billed by J. Nelson Wilkinson at a rate of $295; and 2.6 hours billed by Ashley Winsky at a rate of $265. (Def.'s Mem. Supp. Exs. B & B-1.) In support of its petition, VCU has attached copies of billing invoices containing time entries detailing defense counsel's work. Stewart filed a brief in opposition on March 14, and the matter is now ripe for decision.[2] For the reasons set forth herein, Defendant's request will be granted in part.

## I. STANDARD OF REVIEW

Upon dismissing a litigant's action as a sanction for failure to comply with the rules of discovery, as here, "the court *must* order the disobedient party ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

---

[1] Defendant's original petition, filed on March 8, 2012, inadvertently requested $37,252 in fees. In order to correct this typographical error, VCU filed an amended petition on March 15, seeking an award in the amount of $33,585. The revised petition does not otherwise differ from Defendant's initial submission.

[2] In his Motion to Dismiss Defendant's Petition for Attorney's Fees After Court's Final Order (Dk. No. 190), Plaintiff "moves" the Court "to dismiss" Defendant's motion for an award of fees. The Court views Stewart's submission as a brief in response to VCU's petition. To the extent the document can fairly be construed as a separate motion, however, including as a request to reconsider the Court's prior decision to dismiss Stewart's case, it will be denied.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). As the Court noted in its February 13 Memorandum Opinion, VCU is entitled to recoup at least some portion of the legal expenses that resulted from Stewart's misconduct. The sole task for the Court at this juncture is to decide what constitutes a "reasonable" recovery of fees. *Id.*

In determining an award of attorney's fees, a district court must first compute the so-called "lodestar" amount by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). Because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services," this lodestar method generates a presumptively reasonable fee. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986). "[C]alculation of the lodestar 'does not end the inquiry,'" however. *Lyle v. Food Lion*, 954 F.2d 984, 989 (4th Cir. 1992) (quoting *Del. Valley Citizens' Council*, 478 U.S. at 565). The court may "adjust the lodestar upward or downward as it deems appropriate," so long as it does so "on a principled basis, clearly explained by the court." *Id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984), and *Hensley*, 461 U.S. at 437-40).

The Fourth Circuit has explained that, in assessing the overall reasonableness of a fee request, a district court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the

    undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson*, 560 F.3d at 243-44. Although "these factors must be considered ... in arriving at a determination of reasonable attorneys' fees," the court need not address each one in extensive detail. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

## II. ANALYSIS

### A. Calculation of the Lodestar Figure

#### *1. Determination of a Reasonable Hourly Rate*

This Court must first determine whether Defendant's fee request incorporates a reasonable hourly rate. As noted by the Fourth Circuit, "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee," and fee applicants bear the burden of proving that their asserted hourly rates are reasonable. *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990). To meet their burden, movants "must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [they] seek[] an award." *Grisson v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008). The fee applicants may draw from "a range of sources," including "evidence of the fees [counsel] ha[ve] received in the past," *Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 290 (4th Cir. 2010), or "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Plyler*, 902 F.2d at 278; *see also Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (considering "affidavits from other area attorneys").

4

In this case, two of VCU's attorneys—Ms. Jacob, who is lead counsel, and Ms. Rafal—have submitted sworn affidavits setting forth their credentials and experience in employment litigation. (Def.'s Mem. Supp. Exs. A & B.) Both are partners in the Labor and Employment department at Williams Mullen, P.C., a well-respected regional law firm. Ms. Rafal has practiced law for more than a decade, and Ms. Jacob for more than thirty years. The affidavits further indicate that Mr. Wilkinson is a "high[ly] regarded" and "highly efficient" fifth-year associate, and Ms. Winsky a third-year associate, in Williams Mullen's Labor and Employment practice group. (Jacob Aff. ¶¶ 8-9.) Finally, Mr. Thompson, who provided paralegal services in this matter, is described as a senior paralegal with more than ten years of experience in federal litigation. (Id. ¶ 9.)

Defendant has also attached to its petition the declaration of Sean Gibbons, a Richmond-area attorney well versed in labor and employment law. (Def.'s Mem. Supp. Ex. C.) Based on his professional interactions, Mr. Gibbons describes Ms. Jacob, Ms. Rafal, and Mr. Wilkinson as "very seasoned and accomplished" in the field of labor law, "highly skilled and efficient," and "very talented," respectively. (Gibbons Aff. ¶¶ 3-5.) He also affirms that Mr. Thompson is an able and efficient labor and employment paralegal. In addition, Mr. Gibbons asserts that "[t]he hourly rates of $470 for Ms. Jacob, $360 for Ms. Rafal, ... $295 for Mr. Wilkinson, $265 for junior associates, and $180 for Mr. Thompson are generally commensurate with, or are in some cases lower than, the rates charged ... by other attorneys with similar experience in the Richmond legal community while handling labor and employment litigation matters before" federal courts in the Eastern District of Virginia. (Id. ¶ 7.)

By producing defense counsel's "own affidavits," as well as the affidavit of Mr. Gibbons, a "local lawyer[]" familiar with both the abilities of VCU's attorneys as well as the fees ordinarily charged in federal labor and employment matters, Defendant has met its burden to produce "satisfactory specific evidence" of relevant market rates in the Eastern District of Virginia. *Plyler*, 902 F.2d at 277-78. Based upon the evidence presented, the Court is satisfied that the hourly rates charged by counsel in this matter appropriately reflect each attorney's relative seniority and expertise. The Court therefore finds the requested rates to be reasonable.

### *2. Determination of a Reasonable Expenditure of Time*

Next, the Court must assess whether Defendant's fee demand represents a reasonable expenditure of time. This second stage of the lodestar analysis requires the Court to "exclude from [its] initial fee calculation" any excessive, redundant, or otherwise "not 'reasonably expended'" hours. *Hensley*, 461 U.S at 434. In order to fulfill its obligation to "submit evidence supporting the hours worked," *id.* at 433, VCU has filed billing invoices with time entries for all of the tasks underlying its request. Ms. Jacob avers that "[n]one of the entries on the redacted bills include tasks that are not related to Plaintiff's failure to comply with this Court's rules or orders."[3] (Jacob Aff. ¶ 10.)

Notably, VCU claims that its reimbursement request for 93.7 hours represents "only ... a *portion* of the fees associated with Plaintiff's [non-compliance]." (Def.'s

---

[3] In this regard, Defendant's petition appears to comport with this Court's instruction in the February 13 Memorandum Opinion that VCU limit its request to fees incurred as a direct result of Stewart's violation of this Court's rules and orders.

6

Mem. Supp. 1 n.1 (emphasis added).) Specifically, VCU "has narrowed its request for fees to three discrete areas": (1) the preparation of Defendant's August 5, 2011 Motion to Compel Answers to First Set of Interrogatories and Responses to First Request for Production of Documents (ECF No. 66), which this Court granted in an order that Plaintiff did not comply with; (2) the preparation of Defendant's September 2, 2011 Motion for Dismissal and Attorney's Fees (ECF No. 116), which the Court granted in dismissing Stewart's case; and (3) the scheduling, preparation, and execution of Plaintiff's continued deposition on September 23, 2011. (*Id.* at 1-2.)

Moreover, Defendant has voluntarily excluded from its demand certain of defense counsel's work pertaining to these three tasks. For example, Ms. Jacob states that she did "not include[] in the Fee Petition the time that [she] expended in preparation" for the second day of Plaintiff's deposition, originally scheduled for September 2, 2011, on which date Stewart failed to attend. (Jacob Aff. ¶ 12.) Additionally, "Ms. Rafal's time assisting in preparing for [Stewart's continued] deposition [on September 23] and her time for attending the deposition, including the call with Judge Lauck, is omitted from the Petition for Fees." (*Id.* ¶ 14.) VCU has also omitted much of the time counsel spent on exceptional client communications as necessitated by Stewart's frequent "unusual pleadings" and the "unusual positions" taken therein. (*Id.* ¶ 13.)

Defendant argues that 93.7 hours was an appropriate amount of time to expend in this matter, particularly since Plaintiff's failure to adhere to the Court's commands made the discovery process "far more time and labor intensive than necessary." (Def.'s Mem. Supp. 3.) As an example, Defendant explains that the undue delay occasioned by

7

Stewart's failure to attend his deposition on September 2, as well as his evasiveness during questioning at his continued deposition, required counsel to take extraordinary measures to obtain even basic information related to VCU's defense. (*Id.* at 3-4.) The Court is not unsympathetic to Defendant's account; as this Court's February 13 Memorandum Opinion depicts in detail, Stewart's recalcitrant approach to this litigation has required both opposing counsel and this Court to commit substantial amounts of resources to the resolution of needless disputes.

Defendant also contends that Stewart's "prolificacy" justifies the number of hours its attorneys have dedicated to this matter. Here, again, Defendant's claim finds support in the Court's prior findings. As this Court previously noted:

> Stewart is, by far, one of the most prolific litigants—*pro se* or otherwise—that this Court has ever witnessed. Yet, despite his active and, at times, seemingly restless approach to this litigation, Stewart has proven incapable of following instructions and observing simple rules.

(ECF No. 178, 14.) Having filed more than thirty motions in this case, Stewart cannot now argue that the time which counsel for VCU devoted to this litigation was not "reasonably expended." Had Stewart complied with his duties to opposing counsel and this Court, defense counsel would not have needed to mount the 93.7-hour defensive effort for which VCU now seeks reimbursement.

Two principal observations guide this Court's reasonableness assessment. First, Defendant's fee request is narrowly cabined to tasks arising from Stewart's non-compliance with his discovery obligations and the instructions of this Court. And second, by omitting various related tasks from its petition, VCU appears not to seek

8

recovery of the entirety of its costs under Rule 37. In light of these facts, and upon thorough review of the time entries submitted by VCU, this Court finds 93.7 hours to be a reasonable time expenditure for purposes of calculating the lodestar figure. Accordingly, the Court deems the following amounts to constitute appropriate initial estimates of the value of VCU's lawyers' services:

| VCU Attorney | Hourly Rate | Hours Expended | TOTAL |
|---|---|---|---|
| Ms. Jacobs | $470 | 33.7 | $15,839 |
| Ms. Rafal | $360 | 26.5 | $9,540 |
| Mr. Wilkinson | $295 | 17 | $5,015 |
| Ms. Winsky | $265 | 2.6 | $689 |
| Mr. Thompson | $180 | 13.9 | $2,502 |
| LODESTAR FIGURE: | | | $33,585 |

### B. Variation from the Lodestar Amount

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434. Specifically, courts must consider the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974), and adopted by the Fourth Circuit in *Barber*, 577 F.2d at 226. This Court has reviewed all of the *Johnson* factors, and finds two to be especially relevant here: "the novelty and difficulty of the questions," and "the skill requisite to perform the legal service properly." Because these considerations are interrelated, the Court will address them together.

9

As previously stated, counsel for VCU comprise a seasoned group of lawyers at one of the top firms in the mid-Atlantic region. As experts in the field of labor and employment law, these attorneys were retained, presumably, because this case involves allegations of employment discrimination and wrongful discharge. Yet months of Plaintiff's posturing stalled this case in its early stages, and as a consequence, defense counsel invested much of their time—indeed, *all* of the time for which they now seek to recover fees—in resolving mere peripheral discovery disputes.

A few examples are illustrative. Time entries contained in VCU's billing invoices reflect that on August 10, 2011, Ms. Jacob, acting as lead counsel, expended 2.5 hours on a "lengthy phone call with ... Stewart regarding [his] failure to comply with deposition notice and related issues." (Def.'s Mem. Supp. Ex. B-1, at 9.) Similarly, Ms. Rafal expended 1.2 hours on September 19 communicating with Stewart "regarding [his] deposition" and analyzing "related ... rules." (*Id.* at 33.) And on October 6, Ms. Jacob expended 5 hours reviewing videograph from Stewart's continued deposition in order to "obtain visual examples of frustration" for use in Defendant's motion for sanctions. (*Id.* at 45.) As these examples demonstrate, the battle in this matter was substantially fought (and won) on procedural grounds.

Although VCU is entitled to recoup the costs incurred in enforcing Stewart's discovery obligations, the expenditures of time at issue do not involve the sort of complex and specialized advocacy that ordinarily justifies defense counsel's premium fees. Defendant's award must be adjusted accordingly. Mindful that the tasks for which VCU seeks recovery bear only a minimal connection to counsel's core areas of expertise,

this Court finds that a fifteen percent reduction in the lodestar figure would adequately bring Defendant's fees within the bounds of overall reasonableness under Rule 37. This adjustment yields a sum of $28,547.25.

Alternatively, the Court finds this downward adjustment to be appropriate in light of Plaintiff's status as a *pro se* litigant proceeding *in forma pauperis* in this matter. Although "the court must order the disobedient party ... to pay the reasonable expenses, including attorney's fees, caused by [the party's] failure" to comply with court orders, the court has discretion to modify the reimbursement amount if "circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The Court does not condone Stewart's repeated misconduct. Under the circumstances presented, however, the Court finds that a moderately reduced award in the amount of $28,547.25 would adequately account for each party's interests, while avoiding any sort of unfairness to either party.

## III. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's request for attorney's fees. Finding the initial lodestar calculation to yield an unreasonably high figure, however, the Court will impose a modest discount and require Plaintiff to pay Defendant's legal fees in the amount of $28,547.25.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: April 3, 2012
Richmond, VA

11